**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| KIMBERLY SMITH,<br><br>    **Plaintiff,**<br>  v.<br><br>CAROLYN W. COLVIN,<br>**Acting Commissioner of the Social**<br>**Security Administration,**<br><br>    **Defendant.** | No. EDCV 13-2244 AJW<br><br><br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's applications for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are not disputed and are summarized in the Joint Stipulation. [JS 2]. Plaintiff alleges that she has been disabled since May 31, 2011 due to diabetes mellitus, diabetic neuropathy, hypertension, hyperlipidimia, low back pain status post L5-S1 interbody fusion, chronic obstructive pulmonary disease ("COPD"), and anxiety. [JS 2]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") found that plaintiff had severe impairments consisting of diabetes mellitus, diabetic neuropathy,

hypertension, hyperlipidimia, low back pain status post L5-S1 interbody fusion, chronic obstructive pulmonary disease ("COPD"), and anxiety. [JS 2; Administrative Record ("AR") 13, 15]. The ALJ stated that he had considered several impairments included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listing"), but that plaintiff's impairments did not meet or medically a listed impairment. [AR 16]. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of sedentary work. [AR 16-17]. Based on the testimony of a vocational expert, the ALJ found that plaintiff' could not perform her past relevant work as a cashier, but that her RFC did not preclude her from performing alternative jobs available in significant numbers in the national economy. [AR 20-21]. Therefore, the ALJ concluded that plaintiff was not disabled at any time through the date of his decision. [AR 21-22].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Step three finding**

Plaintiff contends that the ALJ erred at step three of the sequential evaluation in finding that her impairments did not meet or equal listing 1.04. [See JS 2]. More specifically, plaintiff argues that the ALJ did not adequately explain the basis for that finding and failed properly to consider the

treating source evidence in making that finding. [See JS 3-11].

Listing 1.04 defines the criteria for presumptive disability due to disorders of the spine, such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, degenerative disc disease, and facet arthritis, that result in compromise of a nerve root or the spinal cord, with specified medical findings relating to (1) evidence of nerve root compression, (2) spinal arachnoiditis, or (3) lumbar spinal stenosis resulting in pseudoclaudication. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.[1] Plaintiff contends that the ALJ failed to properly weigh the treating source evidence in determining that she does not meet or equal listing 1.04 and did not "provide a proper explanation" for his step three finding. [JS 3-9]. Plaintiff also argues that her RFC as found by the ALJ meets or equals listing 1.04. [JS 7-11].

To "meet" a listed impairment, a disability claimant must establish that his or her condition satisfies each element of the listed impairment. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990), superseded by statute on other grounds as stated in Colon v. Apfel, 133 F. Supp. 2d 330, 338-339 (S.D.N.Y. 2001); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, a claimant must exhibit signs, symptoms, and laboratory findings that are at least equal in severity and duration to *all* of the specified medical criteria for the most similar listed impairment. Sullivan, 439 U.S. at 531; Tackett, 180 F.3d at 1099-1100. "A claimant cannot qualify for benefits

---

[1] The full text of listing 1.04 is as follows:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
or
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
or
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting Sullivan, 493 U.S. at 531).

Plaintiff argues that the ALJ did not "provide a proper explanation" for his step three finding. [See JS 3-9]. Although it is true that the ALJ did not make specific subsidiary findings supporting his conclusion that plaintiff's impairments did not meet or medically equal a listed impairment, he was not required to do so. See Kennedy, 738 F.3d at 1178 (noting that the ALJ is "simply require[d] . . . to discuss and evaluate the evidence that supports his or her conclusion" at step three but does not have to "do so under the heading 'Findings'") (quoting Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)). The ALJ's decision includes a summary and analysis of the medical evidence, including treating and examining source physical examination findings, lumbar spine MRI and x-ray results, and plaintiff's lumbar spine surgery report. Moreover, plaintiff was represented by counsel during the hearing. During counsel's opening statement, she argued that the ALJ "would be able to make a favorable finding using medical vocational grid rule 201.00(h)." [AR 483]. Counsel did not specifically argue that plaintiff's impairments met or equaled a listing, nor did she present evidence showing listing equivalence. The ALJ's decision as a whole adequately "discuss[es] and evaluate[s] the evidence that supports" his step three finding, Kennedy, 738 F.3d at 1178, and the ALJ's failure to make specific subsidiary findings at step three is not legal error. See Burch, 400 F.3d at 683 (stating that "an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence," and holding that the ALJ did not commit reversible error because the claimant did not present testimony or other evidence to establish listing equivalence during her hearing or on appeal) (citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)); Gonzalez v. Sullivan, 914 F.2d 1197, 1200-1201 (9th Cir. 1990) (holding that the ALJ did not err as a matter of law in failing to state what evidence supported his finding that the claimant failed to meet or equal a listed impairment because his four page, single-spaced "evaluation of the evidence" was "an adequate statement of the 'foundations on which the ultimate factual conclusions are based'") (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.1981)).

Plaintiff also contends that in making his step three finding, the ALJ failed properly to consider treating source evidence from plaintiff's treating orthopedists, Dr Loomba and Dr. Mesiwala. [JS 4-7]. Plaintiff contends that the treating source records establish that she met or equaled listing 1.04A or 1.04 due to "severe L5-S1 degenerative disc disease with disc collapse resulting in moderate to severe foraminal stenosis resulting in compromise of a nerve root or the spinal cord with distribution of pain, limitation of motion of the spine, sensory or reflex loss and positive straight leg-raising test," with "resulting inability to ambulate effectively, meaning plaintiff has an extreme limitation of the ability to walk . . . ." [JS 9-10].

The treatment records from Dr. Loomba and Dr. Mesiwala include diagnoses of herniated lumbar disc, severe L5-S1 degenerative disc disease with disc collapse, and moderate to severe foraminal stenosis.[2] [AR 99-126, 261-262, 267-269]. Those are spine disorders that may be used to meet or equal listing 1.04. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.04K, 1.04K4, 1.04. However, the Commissioner "does not consider a claimant's impairment to be one listed in Appendix I solely because it has the diagnosis of a listed impairment. 'It must also have the *findings* shown in the Listing of that impairment.'" Marcia, 900 F.2d at 175 (italics in original) (citing 20 C.F.R.§§ 404.1525(d); SSR 83-19, at 90). The claimant's condition "must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan, 493 U.S. at 530 (italics in original) (footnote omitted).

Listing 1.04 requires "compromise of a nerve root . . . or the spinal cord" along with the findings specified in subsection A, B, or C. Listing 1.04A requires evidence of nerve root compression that is "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight- leg raising

---

[2] Spinal stenosis is defined as "a narrowing of the open spaces within [the] spine, which can put pressure on [the] spinal cord and the nerves that travel through the spine. Spinal stenosis occurs most often in the neck and lower back." Mayo Clinic website, Diseases and Conditions, Spinal Stenosis, Basics, Definition, *available at* http://www.mayoclinic.org/diseases-conditions/spinal-stenosis/basics/definition/con-20036105 (last accessed Oct. 14, 2014).

- 5 -

test (sitting and supine)." Dr. Loomba's progress notes document findings of tenderness of the lumbar paraspinal muscles and increased pain with flexion and extension of the spine; however, he consistently found that plaintiff had full motor strength in the bilateral lower extremities, normal reflexes, and negative straight-leg raising tests, both before and after plaintiff's lumbar fusion surgery on December 7, 2011. [See AR 17-18, 100, 105, 108, 112, 115, 118, 121, 152, 155, 158, 161, 164, 170, 175, 178, 182, 185, 187, 189, 191, 193, 195, 197, 200, 202, 379, 382, 385, 388, 391, 394, 397, 400]. Dr. Mesiwala's pre-operative neurological examination report also notes that plaintiff's spinal flexion range of motion was limited, but that she had normal lower extremity motor strength, intact sensation, and normal reflexes. [AR 261-262]. Therefore, plaintiff has not shown that her condition met or equaled all of the criteria in listing 1.04A.

Listing 1.04B requires a finding of "spinal arachnoiditis,"[3] confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging . . . ." Plaintiff has not pointed to any record evidence of spinal arachnoiditis as described by listing 1.04B, nor do the treating source records contain such evidence. [See 99-126, 150-203, 253-269, 262, 267, 294-295, 299-304, 377-401]. Therefore, she has not shown that her condition met or equaled listing 1.04B.

Listing 1.04C requires "lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in [listing] 1.00B2b."[4] As the ALJ noted, plaintiff underwent an MRI in November 2010 that revealed L5-S1 degenerative disc disease resulting in moderate to severe formaminal stenosis. Plaintiff's treatment records also document a history of chronic back and left leg pain and weakness. Her treating source diagnoses

---

[3] Spinal arachnoiditis is "inflammation of the arachnoid membrane," a membrane that surrounds spinal cord nerves, "often without involvement of the subjacent subarachnoid space." Stedman's Medical Dictionary arachnoid, arachnoiditis (27th ed. 2000).

[4] Pseudoclaudication may result from lumbar spinal stenosis. It "is manifested as pain and weakness, and may impair ambulation. Symptoms are usually bilateral, in the low back, buttocks, or thighs, although some individuals may experience only leg pain and, in a few cases, the leg pain may be unilateral. The pain generally does not follow a particular neuro-anatomical distribution . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04K3.

included lumbar disc disease, lumbar radiculitis, and lumbar radiculopathy. [See, e.g., AR 124, 175, 193, 202 ]. Dr. Bernabe, the orthopedic consultative examiner, also gave an impression of lumbar disc disease with lumbar radiculopathy resulting in lower extremity weakness. [AR 406]. Neither the treating orthopedists nor Dr. Bernabe, however, found that plaintiff suffered from chronic *nonradicular* pain and weakness. Nonradicular pain

> does not follow a particular neuro-anatomical distribution, i.e., it is distinctly different from the radicular type of pain seen with a herniated intervertebral disc, is often of a dull, aching quality, which may be described as "discomfort" or an "unpleasant sensation," or may be of even greater severity, usually in the low back and radiating into the buttocks region bilaterally. The pain is provoked by extension of the spine, as in walking or merely standing, but is reduced by leaning forward.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00K3.

Plaintiff has not pointed to evidence establishing "pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness" as required to satisfy the first prong of listing 1.04C, so even if the ALJ erred in finding that plaintiff did not meet the "ineffective ambulation" prong of that listing, plaintiff has not shown that her condition met or equaled all of the criteria in listing 1.04C.

Plaintiff also contends that the ALJ's findings that plaintiff had a severe impairment of low back pain status post L5-S1 interbody fusion, could perform sedentary work, should avoid uneven terrain, and needed to use a walker when leaving her work station were tantamount to a finding that she could not ambulate effectively, and therefore the ALJ erred in finding that plaintiff did not meet or equal listing 1.04. [JS 9, 11-12]. Plaintiff's argument is misguided because she cannot rely on the "overall functional impact" of her impairments to satisfy a listing. Kennedy v. Colvin, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting Sullivan, 493 U.S. at 531). Absent findings at least equal in severity and duration to *all* of the medical criteria specified in listing 1.04, her impairments cannot meet or equal that section. See Sullivan, 439 U.S. at 530-531; see also Kennedy, 738 F.3d at 1176 (noting that "[l]isted impairments set such strict standards because they automatically end the five-step [disability] inquiry, before [RFC] is even considered"). The ALJ did not err in finding that

plaintiff's impairments did not meet or equal a listed impairment.

**RFC finding**

Plaintiff identifies only one disputed issue for judicial review, "whether the ALJ properly considered if the Plaintiff meets or equals listing 1.04." [JS 2]. In her briefing on that issue, however, plaintiff also argues that the ALJ failed to properly consider Dr. Loomba's treating source opinion in formulating plaintiff's RFC. [See JS 4-6]. Whether the ALJ erred in assessing plaintiff's RFC is a distinct legal issue from the question whether he erred in finding that plaintiff's impairments did not meet or equal a listing. Both issues should have been identified in the "Statement of Disputed Issues," and they should have been separately briefed, as the Case Management Order ("CMO") directs, but plaintiff's counsel did not do so.[5] Since, however, defendant briefed the RFC issue, the Court will consider it.

Plaintiff contends that the ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Loomba's July 2011 "Medical Source Statement." [JS 5-6; see AR 124-126]. Dr. Loomba noted that he had been treating plaintiff for two years (since June 2009). His diagnoses were lumbar radiculitis, lumbar spondylosis, herniated lumbar disc, and Type II diabetes with neurological manifestations, controlled. [AR 124]. Dr. Loomba indicated that plaintiff had chronic low back pain that he rated 9 on a 10-point scale, and fatigue that he rated 7 on a 10-point scale. He said that he had not been able to completely relieve the pain with medication without unacceptable side effects. He opined that plaintiff had the following functional capacity. During a course of an eight-hour work day during a normal five-day work week, plaintiff could sit for 3

---

[5] Plaintiff's counsel is cautioned that her failure to specifically identify a disputed issue as directed in CMO could lead to a finding that the issue has been waived, regardless of whether or not plaintiff's contentions have merit. The CMO prescribes the content and format of the parties' joint stipulation. [CMO 4-7]. It directs that the joint stipulation include a section under the heading "<u>Statement of Disputed Issues</u>" in which the plaintiff "shall identify and frame, in a neutral fashion, each of the disputed issues that plaintiff is raising as the grounds for reversal and/or remand. [Example: Issue No. 1 – Whether the ALJ properly evaluated plaintiff's subjective complaints of pain.]." [CMO 6 (internal quotation marks omitted; italics added)]. The CMO also states that "[a]ny issue not raised in the Joint Stipulation may be deemed to have been waived." [CMO 4]. The court's experience has taught that adherence to the CMO's requirements is necessary to clearly identify the disputed issues and to foster orderly, coherent briefing.

- 8 -

1 hours, stand or walk for 0-2 hours, and occasionally lift less than ten pounds. [AR 124]. She had
2 "significant" limitations in repetitive reaching, handling, fingering, and lifting. She did not use a
3 cane or other assistive device. Her impairments had lasted or could be expected to last for at least
4 12 months. Her condition interfered with her ability to keep her neck in a constant position, and she
5 could not perform a full-time job requiring that activity on a sustained basis. She could not stoop,
6 push, kneel, pull, or bend. Plaintiff was not a malingerer, and emotional factors did not contribute
7 to her condition. She could tolerate moderate work stress. Plaintiff was going to have back surgery.
8 On average, she was likely to be absent from work as a result of her impairments about once a
9 month. [AR 124-126].

10 The ALJ said that he gave Dr. Loomba's opinion "no weight." [AR 20]. Based on the
11 opinions of the examining and nonexamining physicians and plaintiff's subjective testimony, which
12 he credited in part, the ALJ found that plaintiff had exertional and nonexertional limitations
13 restricting her to a narrowed range of sedentary work. [AR 16-20].

14 In general, "[t]he opinions of treating doctors should be given more weight than the opinions
15 of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing
16 Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144,
17 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than those of
18 examining or non-examining physicians because "treating physicians are employed to cure and thus
19 have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v.
20 Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th
21 Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§
22 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2).

23 If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing
24 reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of
25 another doctor, a treating or examining source opinion may be rejected for specific and legitimate
26 reasons that are based on substantial evidence in the record. Orn, 495 F.3d at 632; Tonapetyan, 242
27 F.3d at 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

28 The ALJ said that he rejected Dr. Loomba's opinion because it was "overly restrictive. The

most recent lumbar spine MRI shows satisfactory position of the L5-S1 interbody fusion. Additionally, Dr. Radlauer's recent progress note indicates the claimant's medical and psychological conditions are generally well-controlled with medications." [AR 20].

The reasons given by the ALJ for rejecting Dr. Loomba's opinion in formulating his RFC finding are not sufficiently specific or legitimate. The ALJ referred to plaintiff's "most recent MRI," but did not cite to the record to identify the MRI report on which he relied. The only MRI referenced elsewhere in his decision is a November 2010 MRI that predated plaintiff's lumbar interbody fusion surgery in December 2011. [AR 17-18]. Furthermore, it is unclear how a post-surgical MRI report, even one that shows "satisfactory positioning" of the interbody fusion, could justify the ALJ's wholesale rejection of Dr. Loomba's treating source assessment of plaintiff's condition before she underwent lumbar fusion surgery. The ALJ's reference to a "recent progress note" from Dr. Radlauer, another of plaintiff's treating physicians, also lacks a citation to the record and is equally vague as to how that physician's assessment of plaintiff's recent condition justifies rejecting Dr. Loomba's opinion. Accordingly, the ALJ did not meet his burden to provide specific, legitimate reasons supported by substantial evidence for giving "no weight" to Dr. Loomba's opinion.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)); see Treichler v. Comm'r of Soc. Sec. Admin., — F.3d —, 2014 WL 7332774, at *— (9th Cir. Dec. 24, 2014) (describing this as the "ordinary remand rule"). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally

> sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

A remand for further proceedings is appropriate in this case for further development of the record. Dr. Loomba stated that he had been treating plaintiff since July 2009 for lumbar spine disorders and chronic back pain, but he also said that "the earliest date that the description of symptoms and limitations in this questionnaire applies" was "July 19, 2011+." [AR 126]. Plaintiff underwent lumbar interbody fusion in December 2011, so even if Dr. Loomba's opinion is credited as true for the period beginning on July 19, 2011, his opinion does not reflect her post-surgical condition. Therefore, it is not clear from the record that the ALJ would be required to find plaintiff disabled if Dr. Loomba's opinion is credited, and further development of the record would be useful, including development of treating source evidence regarding plaintiff's condition after her surgery in December 2011.

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed**, and the matter is **remanded to the Commissioner for further administrative proceedings.**

**IT IS SO ORDERED.**

January 20, 2015

                                        ANDREW J. WISTRICH
                                        United States Magistrate Judge